UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATHAN GRAVES,

    Plaintiff,

    v.

MAN GROUP USA, INC., a New York corporation, and MAN FINANCIAL, Inc., a Delaware Corporation,

    Defendants.

No. 06 C 3015
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff Nathan Graves ("Plaintiff" or "Graves") has brought suit against his former employer alleging defamation per se, defamation per quod,[1] interference with a business relationship, and intentional infliction of emotional distress ("IIED"). Defendants Man Group USA, Inc. and its subsidiary Man Financial, Inc. (collectively "Man" or "Defendants") filed a motion to dismiss, which is currently before me. For the reasons that follow, Man's motion is denied.

**I.    BACKGROUND**

Graves began his employment with Man in around April, 2003. His first position was as an Account Executive. Plaintiff alleges that he brought a client, R.G. Neiderhoffer & Associates Capital Management, Inc. ("RGNCM") with him to Man. At all relevant times, his direct supervisors were John Goldsberry ("Goldsberry") and Steve Monieson ("Monieson").

---

[1] Plaintiff filed a motion to voluntarily dismiss Count II of his complaint, the defamation per quod claim. His motion is granted.

Periodically during his employment with Man, Plaintiff was treated for alcoholism, which included stints of hospitalization for rehabilitation.

Plaintiff alleges that in June or July of 2005, Monieson contacted Dean Phelps ("Phelps")—an employee of RGNCM—and told him that Plaintiff had threatened to kill Goldsberry and also threatened Monieson. Graves asserts that he never threatened Goldsberry or Monieson. Plaintiff further alleges that between July 6 and July 15, 2005, Peggy Peloso ("Peloso"),[2] a human resources representative for Man, allegedly spoke on the telephone with Plaintiff's wife regarding Plaintiff's threats to Goldsberry and others at Man. Plaintiff also alleges that Peloso had more than one telephone conversation with Plaintiff's sister in which Peloso allegedly told her that Graves had threatened Goldsberry and others. In August 2005, a sales trainee for Man Group, allegedly told a friend and business acquaintance of Plaintiff that Plaintiff had been terminated for "threatening a big shot."

Plaintiff further alleges that Man informed the Chicago Police Department of these alleged threats. Plaintiff asserts that these actions caused him to suffer severe fear and humiliation and that they prevented him from attending his grandfather's funeral. Plaintiff was notified of his termination from Man on August 1, 2005, effective later that month.

## II. DISCUSSION

*A. Motion to Dismiss Standard*

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant Man's

---

[2]Plaintiff's papers refer to her as "Peluso," while Man's refer to her as "Peloso." Since she is an employee of Man's, I have chosen to adopt Man's spelling.

motion to dismiss only if Plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). I may grant Man's motion only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

    B.    Illinois Workers' Compensation Act

Man argues that Plaintiff's IIED, defamation, and tortious interference claims are barred by the exclusivity provision of the Illinois Workers' Compensation Act, 820 ILL. COMP. STAT. 305/1 (2006) ("IWCA").

The IWCA provides the exclusive remedy for accidental injuries occurring in the workplace. *Richardson v. County of Cook*, 621 N.E.2d 114, 117 (Ill. App. Ct. 1993). To avoid preemption by the IWCA, Plaintiff must demonstrate one of the following: (i) the injury was not accidental; (ii) the injury did not arise from his employment; (iii) the injury was not received during the course of his employment; or (iv) the injury is not compensable under the Act. *Meerbrey v. Marshall Field and Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990); *Richardson*, 621 N.E.2d at 117.

Man agues that Plaintiff's IIED claim is barred by the IWCA because Graves cannot establish any of the four exceptions noted above. Plaintiff counters by noting that at least two exceptions apply. He claims that his injuries were not accidental and that they were not received during the course of employment.

The Illinois Supreme Court teaches that "[t]he exclusivity provisions will not bar a common law cause of action against an employer . . . for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey*, 564 N.E.2d at 1226. Here, the parties disagree as to whether Plaintiff properly pled the "alter ego" exception.

Graves argues that Monieson and Peloso acted as Man's alter ego. He points to both their positions of authority within the company and their supervisory responsibilities. It is by no means certain that Plaintiff will ultimately be able to prove that Monieson and Peloso were acting as Man's alter ego. Nevertheless, I find that for the purposes of this motion to dismiss, Plaintiff has sufficiently pled this claim. *See Watkins v. Woodlawn Community Development Corp.*, No. 05 C 4051, 2006 WL 218163, at *3 (N.D. Ill. January 25, 2006) (citing several cases where motions to dismiss have been denied because the plaintiffs may have been able to prove alter ego). My conclusion regarding the "alter ego" exception obviates the need to consider Man's arguments regarding the "course of employment" exception.

Man also argues that Plaintiff's defamation and tortious interference claims are preempted by the IWCA, and should therefore be dismissed. Man relies principally on *Sarate v. Loop Transfer Inc.*, No. 95 C 5671, 1997 WL 543068 (N.D. Ill. August 28, 1997). The *Sarate* court did hold that "Sarate's defamation claim against Loop is barred by the exclusivity provision of the Act." *Id.* at *6. However, the *Sarate* court was considering the defendant's motion for summary judgment. Here again, in the context of a motion to dismiss, Graves' claims are sufficient to survive Man's motion under Fed.R.Civ.P. 12(b)(6).

C.   *Specific Defamatory Words*

Man next argues that Plaintiff's defamation per se claim should be dismissed because he failed to allege the specific defamatory statements at issue. Under Illinois law, "[a] complaint for defamation must set forth the words alleged to be defamatory 'clearly and with particularity.'" *Krueger v. Lewis*, 794 N.E.2d 970, 972 (Ill. App. Ct. 2003) (*quoting Lykowski v. Bergman*, 700 N.E.2d 1064, 1069 (1998)). Like Illinois law, federal pleading requirements similarly demand plaintiffs to plead the precise language underlying a defamation claim. *Pelech v. Klaff-Joss, LP*, 828 F.Supp. 525, 534 (N.D.Ill. 1993). Specificity is required so that defendants are able to respond to the complaint. *Id*. The specificity requirement notwithstanding, "no Illinois case has ever held that the pleader must place the slanderous remarks within quotation marks." *Krueger*, 794 N.E.2d at 1069. Also, a key inquiry is whether Graves' pleading provided Man with "sufficient information to construct a responsive pleading." *Goldstein v. Kinney Shoe Corp.*, 931 F.Supp. 595, 597 (N.D.Ill. 1996). The *Goldstein* court ultimately denied a motion to dismiss even though the counter-plaintiff had not alleged the exact words of the allegedly defamatory statements. *Id.* at 598.

In this case, though Graves did not plead direct quotations, I find that he did provide sufficient information to permit Man to responsively plead. Graves plead that Monieson called Phelps and told him that Graves sent an e-mail to Goldsberry threatening to kill Goldsberry and that Graves had also threatened Monieson. He alleged that Peloso told Graves' wife that Graves had threatened to kill Goldsberry during a telephone conversation with Monieson and via e-mail communication that morning. He pled that on several occasions between July 6 and July 15, 2005, Peloso told Graves' wife that Graves had threatened to kill Goldsberry. He alleged that

5

Peloso told Graves' wife that the reason for Graves' termination was that Graves had threatened to kill Goldsberry. And finally, he asserted that Peloso told Graves' sister that Graves had threatened to kill three of his bosses, one of whom was named John. Since I determine that his pleadings were sufficient, I will not dismiss Graves' defamation claim on the grounds that he failed to allege the exact words of the allegedly defamatory statements.

        D.      *Tortious Interference with Business Relationship*

Man argues that Plaintiff's tortious interference claim should be dismissed because Man cannot interfere with its own business relationships. To state a claim for tortious interference with a business relationship, Graves must plead (1) a reasonable expectation of future business with a third party; (2) defendant's knowledge of the prospective business; (3) defendant's purposeful interference to prevent the expectancy from being fulfilled, and (4) resulting damage to the plaintiff. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (*citing Fellhauer v. Geneva*, 568 N.E.2d 870 (1991)). To be liable, Defendant must have "taken some wrongful action, directed at a third party, to induce the third party not to do business with the plaintiff." *Gorgonz Group, Inc. v. Marmon Holdings, Inc.*, No. 00 C 2992, 2001 WL 103406, *3 (N.D. Ill. January 30, 2001) (*quoting Young v. Connecticut Mut. Life Ins. Co.*, No. 90 C 254, 1990 WL 125496, at *5 (N.D. Ill. Aug. 17, 1990). Plaintiff must allege "some sort of direct interference with the relationship between the plaintiff and the third party, such as disparagement or wrongful conduct." *Id*.

In his complaint, Graves alleges that Man interfered with his relationship with RGNCM. RGNCM is a client of Man's. Therefore, Man argues that this claim must be dismissed because Graves cannot state a cause of action against Man for interfering with an established relationship

with one of its own clients. The issue here is whether RGNCM can be considered to be a third party. Defendant cites *Bass v. SMG Inc.*, 765 N.E.2d 1079, 1090 (Ill. App. Ct. 2002) for the proposition that "[a]n employer is unable to interfere with the business relationship existing between an employee and a client because the relationship is merely an outgrowth of the relationship between the employer and the employee." Particularly because of the more complicated facts there, I decline to read *Bass* so broadly.

I cannot say, as a matter of law, that the fact that RGNCM was a client of Man's necessarily means that Graves did not also have a relationship with RGNCM. Indeed, Plaintiff alleges that his relationship with RGNCM predates his employment with Man. Since Graves claims that he brought RGNCM with him to Man, it is at least conceivable that he will be able to establish that he had an independent relationship with RGNCM with which Man tortiously interfered.[3] Further, theoretically, Graves may be able to prove that Man tortiously interfered with his relationship with RGNCM precisely in order to preserve its own relationship with the client.

It may well be that this claim cannot be made. However, there ought to be a more complete record than simply the words of the complaint. In recent times, it has been shown that many clients belong not to the firm, but to the individual working at the firm. If this were not the case, the relatively new phenomenon of massive lateral hiring in law firms and other businesses

---

[3]Man, in its reply brief, states, "Plaintiff's prior relationship with RGNCM does not magically transform Man Group's client into a third party." While this is true, Plaintiff's prior relationship is, under the facts here, enough to permit him to withstand a motion to dismiss.

would not exist.⁴  This changed client environment counsels in favor of a more fully developed set of facts.  At bottom, I am not dismissing Graves' tortious interference claim because it is possible that Graves will be able to prove that, under these circumstances, RGNCM was a "third party."

    E.    *Extreme and Outrageous Conduct*

Finally, Man argues that Plaintiff's IIED claim should be dismissed because Plaintiff fails to allege the necessary extreme and outrageous conduct.  To state a claim for IIED under Illinois law, a plaintiff must allege that: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and 3) the defendant's conduct in fact caused severe emotional distress.  *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994).

The parties disagree as to whether, as a matter of law, Graves sufficiently alleged extreme and outrageous conduct.  Under Illinois law, "[l]iability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency."  *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable as IIED.  *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) (*quoting McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988)).

---

⁴*See* Lynne Marek, *Chicago Lateral Market is Reaching a Fever Pitch*, The National Law Journal, March 20, 2007, *available at* http://www.law.com/jsp/llf/PubArticleLLF.jsp?id=1174307785448 (last visited March 23, 2007) (noting that, along with some other firms, DLA Piper is "growing at a fast clip").

Without question, it is proper, under the appropriate circumstances, for a court to grant a defendant's motion to dismiss an IIED claim because the alleged conduct was not extreme and outrageous. *See, e.g., Cook v. Winfrey*, 141 F.3d 322, 332 (7th Cir. 1998); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991).

However, accepting, as I must, all of Plaintiff's allegations as true, I cannot say, as a matter of law, that Plaintiff has failed to state a claim for IIED here. Graves alleges that his supervisors, knowing that Graves was in and out of the hospital for alcoholism, told Graves' wife and sister that he made death threats against his co-workers. He further alleges that these statements were false. In addition, he claims that they took the additional step of contacting the police and having them attend his grandfather's funeral. All of that, together, if true, is sufficiently extreme and outrageous to survive a motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, Man's motion to dismiss is denied in its entirety.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: March 27, 2007